## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IVAN G. McKINNEY,

    Plaintiff,

v.

PROSECUTOR'S OFFICE, et al.,

    Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

Civ. No. 13-2553 (KM) (MCA)

**OPINION**

### KEVIN MCNULTY, U.S.D.J.

## I.  INTRODUCTION

   Plaintiff, Ivan G. McKinney, is a state prisoner currently incarcerated at the New Jersey State Prison in Trenton, New Jersey. He is proceeding *pro se* with a civil rights complaint pursuant to 42 U.S.C. § 1983.

   Mr. McKinney does not specify the offenses of which he was convicted. It can be gleaned from the complaint that they involved drugs and sexual contact with a minor, known as "K.M.".[1] He is now serving a sentence based on those convictions, assuming that he has finished serving prior sentences. Mr. McKinney has been incarcerated at more than one institution; the complaint refers to imprisonment at South Woods State Prison and Bergen County Jail, and he is currently at New Jersey State Prison in Trenton. At one point, McKinney seems to indicate that

---

[1]  The complaint refers to trial, conviction, parole status, and the like, but does not provide much further description. I have consulted the Department of Corrections website in an effort to understand the allegations, although I do not treat them as an authoritative record of convictions. The DOC records refer to a July 25, 2013 sentencing date for multiple counts relating to sexual assault and other offenses against a minor. They further refer to a 2010 sentencing for sexual assault of a minor and a 2008 sentencing for endangering the welfare of a child. The violation of parole does not appear separately. *See generally Chavarriaga v. Lanigan*, No. 12-7700, 2013 WL 276185, at *2 (D.N.J. Jan. 24, 2013) (taking judicial notice of the New Jersey Department of Corrections website for offender searches).

he was at South Woods State Prison in 2010; at another, he refers to imprisonment for a parole violation from April 2011 until February 2012. The chronology remains unclear.

In summary, I have divided Mr. McKinney's many claims into four categories: A, B, C, and D and screened them before requiring any defendant to answer. Based on this screening, all the claims in categories A and B are dismissed, some with prejudice and some without prejudice. The Category C claims are not dismissed. The Category D claims are dismissed, but only in part.

I have severed the Complaint, which contains claims not properly joined together, into three separate actions. Categories A and B (all dismissed) will remain together under the current docket number. Category C will be severed and will be assigned a new docket number. Category D, too, will be severed and will be assigned a new docket number.

Because each of the two new actions requires a separate filing fee, I will give Mr. McKinney the option to file a brief statement, within 30 days, stating whether or not he wishes to proceed. If so, he will be deemed to have satisfied the requirements for *in forma pauperis* status (as he has already done in the current action). The two new filing fees will, like the current one, be deducted in instalments from his prison account. In the two new severed actions containing the Category C and D claims, the defendants will be required to answer the claims not dismissed in the screening process if Mr. McKinney elects to proceed with those newly filed civil actions.

## II.    SCREENING OF CLAIMS IN CATEGORIES A, B, C, AND D

### Introduction: The Screening Requirement; Claims and Defendants

Before requiring the defendants to answer the complaint, I will screen the claims, as I am required to do in this prisoner case, brought *in forma pauperis* against state entities and agents. Mr. McKinney, a prisoner, brings his claims under 42 U.S.C. § 1983, which confers a cause of

2

action for certain violations of federal constitutional rights.[2] His application to proceed *in forma pauperis* will be granted. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 28 U.S.C. § 1997e. The PLRA directs district courts *sua sponte* to dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (per curiam) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That Rule 12(b)(6) standard is well established. The complaint must allege

---

[2]      Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

"sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). *Ashcroft v. Iqbal* holds that "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted; emphasis added).

The docket lists 32 defendants.[3] The precise number of claims in Mr. McKinney's handwritten complaint is open to debate; the paragraphs of the complaint are narratives that sometimes seem to contain more than one claim. For convenience, I have divided Mr. McKinney's many claims into four categories:

A. *Claims Relating to Arrest and Search*

Against:
Det. James Harris – Bergen County Prosecutor's Office
Lt. Edward Russo – New Jersey State Parole Department
Officer Peter Crisculo – New Jersey State Parole Department
Det. Sgt. Mike Antista – Hackensack Police Department
Det. Martin – Hackensack Police Department
Chief John Doe Hackensack Police Department
Chief John Doe – Bergen County Prosecutor's Office[4]
Det. Robert Carucci – Hackensack Police Department
Det. John Dalton – Hackensack Police Department

---

[3]      The complaint contains 30 numbered paragraphs. Generally, but not always, each paragraph names one defendant. Some paragraphs are narratives that may assert more than one claim.

[4]      It is unclear whether this designation refers to the Bergen County Prosecutor or the chief of investigators at that office (i.e., defendant Harris's superior). I have discussed both herein.

B. *Claims Relating to Criminal Trial Proceedings*

    Against:

        Bergen County Prosecutor's Office
        John Doe Assistant Superintendent of Clifton Schools
        David Calviello – Assistant Prosecutor, Bergen County Prosecutor's Office
        John Higgins – First Assistant Prosecutor, Bergen County
        John Molinelli, Bergen County Prosecutor[5]
        Teresa Duenas – Mother of K.M.
        George Santiago – Det. Bergen County Prosecutor's Office
        Daniel Andriulli – Computer Forensics, Bergen County Prosecutor's Office
        Maria Zambrano – Mother of K.M.
        Honorable Judge James Guida – Bergen County Superior Court

C. *Claims Relating to Lack of Medical Treatment at South Woods State Prison*

    Against:

        John Doe Superintendent – South Woods State Prison
        John Doe Doctor – South Woods State Prison
        Jane Doe Nurse Practitioner – South Woods State Prison

D. *Claims Relating to Imprisonment at Bergen County Jail*

    Against:

        Dr. Hemsley – Bergen County Jail Medical Department
        Bergen County Jail
        Capt. Pawson – Bergen County Jail in charge of medical
        Lt. Pickel – Bergen County Jail in charge of grievances
        Warden Bigott – Warden Bergen County Jail
        Capt. Davies – Bergen County Jail
        Kurk Leenig – Supervisor, Mailroom Bergen County Jail
        Officer John Doe in mail room of the Bergen County Jail
        Lt. Acacios – Bergen County Jail
        Aramark Foods – Bergen County Jail

For screening purposes, I will now analyze the claims in Categories A, B, C and D.

## A. Claims Relating to Arrest and Search

    Category A consists of claims arising from the allegedly illegal search of Mr.

McKinney's living quarters and his arrest. They name as defendants a Detective of the Bergen

County Prosecutor's Office and its unnamed Chief;, two officers of the state Parole Department;

---

[5] *See* n.4, above. Although Molinelli is listed on the docket as a defendant, the complaint does not identify him by name.

and four officers and the unnamed Chief of the Hackensack Police Department. The gist of the complaint is that the parole officers conducted a search and interrogation, based on McKinney's status as a parolee, but that this provided a pretext for the police interrogation, search, and warrantless arrest, which lacked a sufficient basis.

### 1. Illegal Search and Seizure

Mr. McKinney's search and seizure claims are tantamount to an attack on his criminal conviction. Indeed, the complaint alleges that the illegal drugs that led to his eventual conviction on CDS charges were seized in the search. (*See* Dkt. No. 1 at p. 12.) The proper forum for such a claim would have been a motion to suppress evidence in the criminal proceedings. (The complaint does not reveal whether such a motion was brought; if it was, it evidently did not succeed.)

"It is well-settled that when a state prisoner is challenging the fact or duration of his confinement, his sole federal remedy is a writ of habeas corpus, not a § 1983 action." *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court analyzed whether a prisoner could challenge the constitutionality of his conviction in a suit for damages under Section 1983. The Supreme Court rejected the use of Section 1983 as a vehicle to challenge the lawfulness of the criminal judgment:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state

> prisoner seeks damages in a § 1983 suit, the district court must
> consider whether a judgment in favor of the plaintiff would
> necessarily imply the invalidity of his conviction or sentence; if it
> would, the complaint must be dismissed unless the plaintiff can
> demonstrate that the conviction or sentence has already been
> invalidated.

*Heck*, 512 U.S. at 486-87.

Under the *Heck* doctrine, no such civil claim can be brought unless and until the

conviction itself is successfully attacked. A convicted, imprisoned defendant cannot, for

example, sue the government witnesses on the theory that they lied, or sue the police for seizing

the evidence on which the conviction was based. Thus *Heck* has often been applied to cut off

claims of prisoners who seek, in effect, to relitigate the merits of currently valid convictions *via* a

civil suit challenging the legality of a search. *See, e.g., Crawford v. Frimel*, 337 F. App'x 211,

213 (3d Cir. 2009) (per curiam) (applying *Heck* bar to Fourth Amendment claim as success

would imply the invalidity of his conviction); *Hinton v. White*, No. 10-3902, 2012 WL 6089476,

at *3 (D.N.J. Dec. 6, 2012) (applying *Heck* bar to illegal search and seizure claim that would call

into question state criminal conviction) (citations omitted).

Mr. McKinney's illegal search and seizure claim is barred by *Heck,* because it seeks to

call into question the validity of his state criminal conviction. The search and seizure claims will

therefore be dismissed. That dismissal is without prejudice to refiling if, for example,

McKinney's conviction is overturned. *See Brown v. City of Phila.*, 339 F. App'x 143, 145-46 (3d

Cir. 2009) (per curiam) (stating that when a claim is barred under *Heck*, dismissal should be

without prejudice) (citing *Fottler v. United States*, 73 F.3d 1064, 1065-66 (10th Cir. 1996)).

2. *False Arrest*

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish:

(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v.*

*City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)). "'Probable cause to arrest exists when the facts and the circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)); *see also Minatee v. Phila. Police Dep't*, 502 F. App'x 225, 228 (3d Cir. 2012) (citation omitted). The arresting officer must only reasonably believe at the time of the arrest that an offense is being committed, a significantly lower burden than proving guilt at trial. *See Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005); *see also Minatee*, 502 F. App'x at 228 (citation omitted). When a plaintiff is arrested for multiple charges, the establishment of probable cause as to one charge is sufficient to defeat a Fourth Amendment claim. *See Startzell v. City of Phila., Pa.*, 533 F.3d 183, 204 n.14 (3d Cir. 2008) (citation omitted).[6]

A false arrest claim, like the others above, is barred by *Heck*. As presented, this false arrest claim directly attacks the validity of Mr. McKinney's convictions in this case. *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (noting where plaintiff is convicted, false arrest claim is barred by *Heck*); *see also Carter v. Warraich*, No. 08-1835, 2009 WL 871947, at *2 (D.N.J. Mar. 30, 2009) (collecting cases dismissing false arrest claims as barred by *Heck*).

---

[6]     The complaint itself reveals that the searching officers found, among other things, the drugs that were ultimately used to convict Mr. McKinney on CDS charges. That alone appears to refute any contention that probable cause for arrest was lacking. Additionally, Mr. McKinney was also arrested and charged with respect to sexual abuse of a minor. Since he was convicted of those charges, a claim that probable cause was lacking is at best problematic. Because *Heck* bars the claim, I do not reach these issues.

The illegal search and false arrest claims against James Harris,[7] Chief John Doe (Bergen), Russo, Crisculo, Martin, Antista, Carucci, John Dalton, and Chief John Doe (Hackensack) will be dismissed. As is appropriate for claims barred by *Heck*, this dismissal is without prejudice to refiling if, for example, the underlying criminal conviction is overturned.

## B. Claims Relating to Criminal Trial Proceedings

Mr. McKinney has raised claims against several defendants arising from his criminal trial and the proceedings surrounding it. These claims are asserted against the presiding judge, a school superintendent, prosecutors and investigators from the Bergen County Prosecutor's Office (as well as the Office itself), and the parents of K.M. (the minor victim of one of the offenses of conviction).

### i.    *Judge Guida*

James Guida, a Judge of the Bergen County Superior Court, presided at Mr. McKinney's trial. The complaint alleges that Judge Guida lied when he said there was no relevant material in certain Clifton school records and kept them out of evidence. (The records were apparently those of K.M., the minor victim of one of the offenses.) Further, Judge Guida allegedly inflicted cruel and unusual punishment on McKinney by keeping his courtroom too cold during two days of motion hearings.

Generally, a judicial officer has absolute immunity in the performance of his or her duties. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam). The immunity is absolute and cannot be overcome by allegations of bad faith or malice. *See id.* There are two exceptions: (1) for non-judicial actions, not taken in the judge's official capacity; and (2) for actions which,

---

[7]     To the extent that Mr. McKinney separately alleges that Mr. Harris is liable because he improperly coached the minor victim's statement, such a claim would also be barred by *Heck* as it attacks the invalidity of Mr. McKinney's conviction of the sex offense. As noted above, nn. 4&5, to the extent "Chief John Doe" may refer to Harris's superior, that defendant is included in the discussion here.

although judicial in nature, were taken in the complete absence of jurisdiction. *See id.* at 11-12. Whether an act is judicial relates "to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *see also Gallas v. Supreme Court of Pa.*, 211 F.3d 760 (3d Cir. 2000).

Judge Guida's ruling that the school records were not relevant is quintessentially a judicial act. Absolute immunity applies.

Mr. McKinney also alleges that Judge Guida denied his lawyer's request for a postponement in light of the lack of heat in the courtroom, and that he sat in short sleeves for two days of motion hearings. Ordinary courtroom administration, as well as the denial of a continuance, are judicial functions entitled to absolute immunity. A temporarily chilly room does not rise to the level of being cruel and unusual; it does not deprive a person of the minimal necessities of civilized life, or impose a severe hardship. Nor was this punishment. It preceded the imposition of sentence. The temperature was a condition common to all who sat in the courtroom: witnesses, parties, attorneys, and the judge himself. There is no allegation that the defendant could not have donned a sweater or jacket, that the court had the obligation to furnish one, or that McKinney's attorney or a family member could not have lent him something warm.

Petitioner's claims against Judge Guida will be dismissed with prejudice on grounds of immunity, as well as failure to state a claim.

ii.   *John Doe Assistant Superintendent of Clifton Schools*

This anonymous Assistant Superintendent of Clifton Schools allegedly was negligent in releasing school records of the victim, K.M., to McKinney's criminal attorney (who seemingly gave a copy to McKinney), instead of directly to Judge Guida. This, says McKinney, raised

10

questions of privacy and ethics, and it placed his attorney in an awkward and conflicted position. It appears from the face of the complaint, however, that Judge Guida did receive and review the records. Indeed, Mr. McKinney complains about Judge Guida's rulings with respect to the records. (*See* preceding section.)

These allegations do not state a Section 1983 claim against the school superintendent. Whether the records passed through the hands of an attorney before reaching Judge Guida is irrelevant to any claim that this defendant violated any right secured by the Constitution or laws of the United States. The claims against this John Doe defendant are dismissed with prejudice.

iii.   *Bergen County Prosecutor's Office, Calviello, Molinelli and Higgins*

David Calviello, an assistant prosecutor at the Bergen County Prosecutor's Office, is accused of malicious prosecution. A prosecutor who acts within the scope of his duties in initiating and pursuing a criminal prosecution enjoys absolute immunity and is not amenable to suit under Section 1983. *See Imbler v. Pachtman*, 424 U.S. 409, 410 (1976); *see also Arsad v. Means*, 365 Fed. App'x 327, 329 (3d Cir. 2010) (per curiam). A prosecutor's appearance in court to advocate the state's position or present evidence is protected by absolute immunity. *See Burns v. Reed*, 500 U.S. 478, 492 (1991). The allegations against Mr. Calviello (that he changed positions regarding the significance of the DNA evidence, or withheld evidence) fall within the core functions of a prosecutor. The claims against Mr. Calviello will be dismissed with prejudice on grounds of absolute immunity.

John Higgins, first assistant prosecutor, and John Molinelli, Bergen County Prosecutor,[8] are allegedly liable under a *respondeat superior* theory, or because they allegedly did nothing in response to Mr. McKinney's complaints about Calviello's actions.

---

[8]      *See* nn. 4 & 5, *supra*.

Section 1983 does not incorporate *respondeat superior*. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). To the extent Mr. McKinney seeks to assert a *respondeat superior* theory, it is a legal nullity.

Alternatively, a supervisor may be liable if he or she had personal involvement in the alleged wrongs. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also In re Bayside Prison Litig.*, No. 97-5127, 2007 WL 327519, at *5 (D.N.J. Jan. 30, 2007). Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence. *See Rode*, 845 F.2d at 1207; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

McKinney's allegations rest in part on these superiors' acquiescence in Calviello's supposedly wrongful acts. But Calviello himself, as noted above, is not liable. Nor does this lengthy complaint state any facts that give rise to an inference of culpable acquiescence; it simply names Molinelli and Higgins as Calviello's superiors.

Finally, to the extent Molinelli and Higgins were exercising prosecutorial functions, they would be immune. The claims against Molinelli and Higgins are dismissed with prejudice.

The Bergen County Prosecutor's Office is also named as a defendant. Mr. McKinney seeks to hold the Office liable based on Calviello's actions. This claim must be dismissed for several reasons.

First, the Office is not liable via *respondeat superior*. The complaint contains no allegations of, for example, a policy that might confer municipal liability by analogy to *Monell*, 436 U.S. 658.

Second, the claims against the Office are barred by the Eleventh Amendment. The Eleventh Amendment protects non-consenting states from suits brought in federal court by

private citizens seeking money damages. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). For Eleventh Amendment purposes, "'[w]hen [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State.'" *Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 182 (3d Cir. 2013) (per curiam) (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996)). It is settled that a County Prosecutor's Office in New Jersey is entitled to Eleventh Amendment immunity when discharging its law enforcement functions. *Id.*; *Beightler v. Office of Essex Cnty. Prosecutor*, 342 F. App'x 829, 832 (3d Cir. 2009) (per curiam).[9]

Third, the Prosecutor's Office as such is not an entity with the capacity to be sued. It has no juridical status apart from that of the County Prosecutor or the State. *Watkins v. Attorney General of NJ*, No. 06-1391, 2006 WL 2864631 at *3 & n.2 (D.N.J. Oct. 4, 2006).

Accordingly, the claims against the Bergen County Prosecutor's Office, too, will be dismissed with prejudice.

iv.   *George Santiago & Daniel Andriulli*

Detective George Santiago of the Bergen County Prosecutor's Office allegedly elicited false testimony from the juvenile victim. Daniel Andriulli, who works in computer forensics for the Bergen County Prosecutor's Office, improperly retrieved and attributed an incriminatory meaning to a text message from Mr. McKinney's phone.

These claims are barred by *Heck*, 512 U.S. 477, as discussed above. Mr. McKinney's claims against Santiago and Andruilli necessarily call into question his criminal conviction. The complaint specifically alleges that the allegedly false testimony was critical to his conviction,

---

[9]   Whether a particular agency partakes of the State's Eleventh Amendment immunity depends on three factors: (1) the source of the agency's funding – i.e., whether payment of any judgment would come from the state's treasury; (2) the status of the agency under state law; and (3) the degree of autonomy from state regulation. *See Fitchick v. New Jersey Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989) (en banc).

which has not been overturned or called into question. *Heck* signifies that a convicted, imprisoned defendant cannot turn around and sue witnesses or law enforcement personnel for damages on the theory that they lied or otherwise misled the jury.

The claims against defendants Santiago and Andriulli will be dismissed because they are barred by *Heck.* Such dismissal is without prejudice to refiling if, for example, McKinney's conviction is overturned.

     v.    *Teresa Duenes and Maria Zambrano*

Teresa Duenes and Maria Zambrano are identified as parents of K.M., a minor, who was the victim of one of the offenses of conviction. Remarkably, Mr. McKinney seeks to sue these parents for damages. But for their failure to supervise K.M., says Mr. McKinney, he would never have met this "juv[e]nile that seem[ed] to be older" at a Dunkin' Donuts at 3 A.M.  Mr. McKinney also claims that Duenes gave "perjured testimony that led to my conviction."

These allegations would not appear to fit within any recognized cause of action for deprivation of a federal right under Section 1983. Further, they directly attack the basis of McKinney's criminal conviction, and thus are barred by *Heck, supra.*

In addition, Ms. Duenes and Ms. Zambrano are private individuals, not government actors. A Section 1983 claim requires state action. "'Although it is possible for a private party to violate an individual's § 1983 rights, the individual alleging such a violation is not relieved of the obligation to establish that the private party acted under color of state law.'" *Munoz v. City of Union City*, 481 F. App'x 754, 761 (3d Cir. 2012) (footnote omitted) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993)). "This requires the plaintiff to show 'a sufficiently close nexus' between the actions of the private party and the State to warrant treating those actions as those of the State." *Id.* (citing *Kost*, 1 F.3d at 184). The required nexus may be found

where "(1) the private party performed a function typically performed by the state; (2) the private party acted in concert with the State; or (3) the State has become interdependent with the private party." *Id.* (citing *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)). The complaint contains no allegations that would establish such a nexus.

On these multiple overlapping grounds, the claims against Duenes and Zambrano are dismissed with prejudice. Neither an appearance nor an answer will be required.

### C. Claims Relating to Lack of Medical Treatment at South Woods State Prison

The complaint alleges that three anonymous "Doe" defendants (the Superintendent, a doctor, and a nurse practitioner) at South Woods State Prison wrongfully deprived McKinney of needed medical care. Mr. McKinney specifically cites the lack of surgical treatment for his hernia, an injured knee, herniated discs and neck injuries.[10]

For a delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents

---

[10]     The complaint alleges that these are preexisting conditions, not injuries or conditions that developed as a result of imprisonment.

a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.[11] "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (per curiam) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

Allegations of simple malpractice, *i.e.*, treatment that was merely negligent, do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam). The courts will defer to prison medical authorities in their diagnosis and treatment of patients, and "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

I can foresee difficulties with these claims as presented, but the complaint does not furnish a sufficient basis to determine the applicability of certain defenses. Giving this *pro se* pleading the benefit of a liberal construction, I find that it is sufficient to require an answer or other response from the defendants, should plaintiff elect to proceed with it.

### D. Claims Relating to Imprisonment at Bergen County Jail

Mr. McKinney asserts numerous claims arising from his time as a prisoner at Bergen County Jail. Four of these—the Jail's liability, retaliation for complaints about mail, unauthorized opening of personal mail, and Aramark Foods' serving dishes with mayonnaise—will be dismissed for failure to state a claim. The rest—failure to respond to

---

[11]     Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted).

grievances, deliberate indifference to medical needs, and unauthorized opening of legal mail—are sufficient to require an answer or other response from defendants.

### 1. Failure to respond to grievances

Mr. McKinney next raises claims of deliberate indifference and cruel and unusual punishment arising from the alleged failure of some defendants to respond to his grievances. Bigott is the Warden of Bergen County Jail, Captain Davies is the Warden's "#2 shot caller," and Lieutenant Pickel is allegedly in charge of processing grievances. Bigott allegedly ignored medical ailments and, as supervisor, had responsibility for forcing Mr. McKinney to lie on a thin mattress and remain locked in a cell twenty-one hours a day as a high risk inmate. Davies never came by to hear McKinney's complaints and requests (McKinney alleges that high risk inmate like himself are on lockdown and "should have a supervisor that comes several times a week to check on us."). Pickel failed to answer or respond to complaints.

"[P]rison officials cannot be held liable based solely on their failure to take corrective action when grievances or investigations were referred to them." *Miller v. Trometter*, No. 11-0811, 2012 WL 5933015, at *13 (M.D. Pa. Nov. 27, 2012) (citing *Pressley v. Beard*, 266 F. App'x 216 (3d Cir. 2008) (per curiam); *Hughes v. Smith*, 237 F. App'x 756, 758 (3d Cir. 2007) (per curiam)) (other citations omitted); *Robinson v. Green*, No. 12-1212, 2012 WL 5401079, at *3 (E.D. Pa. Nov. 5, 2012); *Mercado v. Ellis*, No. 11-6756, 2012 WL 1636164, at *3 (D.N.J. May 9, 2012) ("It appears that Plaintiff's only claims against the named defendants are based on their failure to investigate or respond to Plaintiff's letters and grievances. These claims fail to rise to the level of a constitutional deprivation sufficient to state a claim under § 1983. Indeed, an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.") (internal quotation marks and citations omitted).

And, as already established, Section 1983 liability cannot be premised on a *respondeat superior* theory. *See Polk Cnty*, 454 U.S. at 325.

These grievance claims, however, at least potentially relate to "another recognizable constitutional right." Some of the ignored grievances, for example, appear to relate to denial of medical care. *See* subsection D.2, below. And, although plaintiff does assert the inapplicable doctrine of *respondeat superior,* he also asserts that the defendants had personal responsibility.

These allegations, should the plaintiff elect to pursue them, are sufficient to require the defendants to answer or otherwise respond.

## 2. *Deliberate indifference to medical needs*

Mr. McKinney alleges that Dr. Hemsley and Captain Pawson failed to give him required medical treatment for his hernia, as well as neck, back, and knee injuries.[12] Doctor Hemsley, the complaint alleges, should have sent him for hernia surgery, which other doctors had previously said was necessary. Captain Pawson, although allegedly alerted to the problem by McKinney and his attorney, did nothing.

The legal principles governing this claim are those outlined in Section C, above. Here, too, I foresee certain difficulties with these claims as presented, but the complaint does not furnish a sufficient basis to determine the applicability of defenses. Giving this *pro se* pleading the benefit of a liberal construction, I find that it is sufficient to require an answer or other response from the defendants, should plaintiff elect to proceed with it.

## 3. *Opening Legal mail*

Mr. McKinney also claims that an unnamed John Doe officer at the Bergen County Jail opened his legal mail outside of his presence on November 3, 2012. "[P]rison officials impinge

---

[12]    The complaint suggests that McKinney suffered these injuries in an accident that occurred when he was not imprisoned, and that he consulted with an outside doctor about them.

upon the First Amendment rights of prisoners when they open prisoners' legal mail outside the presence of the addressee prisoner." *Taylor v. Oney*, 196 F. App'x 126, 128 (3d Cir. 2006) (citing *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006)); *see also Mearin v. Dohman*, No. 06-4859, 2009 WL 3127760, at *10 (E.D. Pa. Sept. 29, 2009) ("Prison inmates generally have no expectation of privacy regarding their personal mail, but prison officials must open inmates' legal mail, if at all, in the presence of the inmate.") (citations omitted); *Stilton v. East Jersey State Prison*, No. 07-3702, 2009 WL 3231219, at *8 (D.N.J. Sept. 28, 2009).

The allegations of the complaint suggest that this incident, if it occurred, may have been a one-time, negligent slip-up. Nevertheless, giving this *pro se* claim a liberal reading, if Mr. McKinney elects to go forward with this claim, I will put defendants to the burden of answering or otherwise responding to it.

### 4. *Opening personal mail*

The complaint alleges that Kurk Leenig is the supervisor of the mailroom at the Bergen County Jail.  Mr. McKinney claims that Leenig opened his personal mail outside of his presence, which constituted an invasion of privacy. Be that as it may, "[p]rison inmates have no expectation of privacy regarding their personal mail." *Ali v. Howard*, No. 05-0102, 2008 WL 4427209, at *5 (D. Del. Sept. 30, 2008) (citing *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991), *Hamilton v. Messick*, No. 03-0807, 2005 WL 736684, at *3 (D. Del. Mar. 31, 2005)), *report and recommendation adopted by* No. 05-0102, Dkt. No. 238 (D. Del. Feb. 24, 2009), *aff'd by*, 353 F. App'x 667 (3d Cir. 2009); *see also Young v. Beard*, No. 07-2266, 2011 WL 902447, at *11 (M.D. Pa. Feb. 11, 2011) ("Generally, prisoner non-legal mail can be opened and read outside the inmate's presence, and does not violate the prisoner's constitutional rights.")

(citations omitted), *report and recommendation adopted by* 2011 WL 901865 (M.D. Pa. Mar. 15, 2011).

Mr. McKinney's allegations against Mr. Leenig regarding his personal mail do not state a Section 1983 claim for violation of a federal right. This claim against Mr. Leenig will be dismissed with prejudice, as any amendment would be futile.

### 5.  *Threatened retaliation*

Mr. McKinney next alleges that Lieutenant Acacios of the Bergen County Jail threatened him with retaliation when he complained that his mail had been opened and sought the name of the person responsible.

> "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him."

*Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (per curiam) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

There is potentially an allegation of constitutionally protected conduct. Mr. McKinney presumably wanted to find out the name of the officer who opened his mail so that he could pursue a prison grievance against him or her.  The filing of such grievances, if they have a constitutional dimension, may qualify as protected conduct. *See Laurensau v. Romarowics*, 528 F. App'x 136, 139 (3d Cir. 2013) (per curiam) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

What the complaint fails to allege, however, is that Mr. McKinney suffered any adverse action as a result. He alleges, at best, an explicit or implicit threat of retaliation. As a matter of law, such a threat is not in itself an adverse action. *See Hagan v. Rogers*, No. 06-4491, 2010 WL

5343188, at *9 (D.N.J. Dec. 20, 2010) ("Threats and verbal assaults, without more, do not constitute adverse action.") (citing *Gay v. City of Phila.*, No. 03-5358, 2005 WL 1844407, at *9 (E.D. Pa. Aug. 2, 2005); *Hill v. Chalanor*, 128 F. App'x 187, 189 (2d Cir. 2005); *Gill v. Pidlypchak*, 389 F.3d 379, 383 (2d Cir. 2004); *Maclean v. Secor*, 876 F. Supp. 695, 698 (E.D. Pa. 1995); *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993).

Mr. McKinney's retaliation claims against Lieutenant Acacios will therefore be dismissed without prejudice.

### 6.   *Liability of Bergen County Jail*

Mr. McKinney asserts that the Bergen County Jail is liable as a defendant because it allowed the individual defendants to perform the various acts (constituting "deliberate indifference and cruel and unusual punishment") alleged elsewhere in the complaint.  (Dkt. No. 1 at p. 23.)

Irrespective of the merits of the claims against jail personnel, the Bergen County Jail itself is not a "person" subject to suit under Section 1983. *See Parrish v. Ocean Cnty. Jail*, No. 13-2020, 2013 WL 5554687, at *2 (D.N.J. Sept. 20, 2013) (holding that Ocean County Jail is not a person subject to suit under 42 U.S.C. § 1983) (citations omitted); *Ross v. Burlington Cnty. Jail*, No. 12-338, 2013 WL 3514191, at *2 (D.N.J. July 11, 2013) (dismissing claims against jail with prejudice as it is not a person subject to § 1983 liability) (citations omitted); *Ruiz v. Stills*, No. 09-4259, 2012 WL 762166, at *4 (D.N.J. Mar. 7, 2012) (dismissing Cumberland County Jail from lawsuit because it is not a person subject to § 1983 liability) (citations omitted). Mr. McKinney's claims against the Bergen County Jail will be dismissed with prejudice.

7. *Mayonnaise/Aramark*

Mr. McKinney alleges that Aramark Foods has supplied food to the Bergen County Jail, served to him, that contains mayonnaise. He claims that he is allergic to mayonnaise, that he has had to refrain from eating certain side dishes, and that he has had to purchase substitute food at the commissary. Mr. McKinney states that his allergy is recorded in the jail computer and that therefore the actions of Aramark must have been deliberate.

This claim does not set forth a cause of action under Section 1983. The Eighth Amendment requires prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)). A prisoner asserting a conditions-of-confinement claim must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Id.* at 834 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L.Ed 2d 59 (1981)).

In addition, a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official is deliberately indifferent, that is, the official knows of and disregards a substantial risk of serious harm to inmate health or safety. *Farmer*, 511 U.S. at 837, 847. The official must both be aware of facts from which he could infer that a substantial risk of serious harm exists, and he must draw that inference. *Id.* (holding that both subjective and objective components must be satisfied).

First, these mayonnaise-related complaints simply do not rise to the level of inhumane treatment, a sufficiently serious deprivation of minimal necessities, or the like. (I add that Mr.

McKinney is no longer at Bergen County Jail, so injunctive relief is not an issue. His claimed damages—presumably the cost of substitute side dishes at the canteen—are minimal.)

Second, this claim does not plausibly allege that Aramark's acts were deliberate. The complaint alleges no facts giving rise to a plausible inference that Aramark, which supplies food to the Jail, knows of McKinney's existence, let alone bears him some ill will that would cause it to deliberately expose him to an allergen. The bare allegation that his meal requirements are in the jail's computer does not suffice.

Third, this claim fails to allege sufficient facts to support and assertion that Aramark is a state actor, a fundamental requirement of Section 1983 liability, *see supra*. The complaint does not allege that Aramark is in a contractual or other relationship with the county that might render it a state actor. *See generally Munoz*, 481 F. App'x at 761 (citing cases).

Fundamentally, however, the allegations against Aramark are frivolous, and amendment would be futile. This claim will be dismissed with prejudice.

## III.  SEVERANCE OF MISJOINED CLAIMS AND DEFENDANTS

### Introduction:  Summary of Dispositions and the Claims That Remain

Here is a summary of the disposition of claims and defendants in the Court's initial screening. *See* Part II, *supra*.

A.  *Claims Relating to Arrest and Search*

| | |
|---|---|
| Claims remaining: | None |
| Defendants remaining: | None |
| Claims dismissed: | All<br>Complaint ¶¶ 4, 5, 6, 8, 9, 10, 11, 16 |
| Defendants dismissed: | Det. James Harris, Bergen County Prosecutor's Office<br>Lt. Edward Russo – New Jersey State Parole Department<br>Officer Peter Crisculo – New Jersey State Parole Department<br>Det. Sgt. Mike Antista – Hackensack Police Department<br>Det. Martin – Hackensack Police Department |

Chief John Doe Hackensack Police Department
Chief John Doe – Bergen County Prosecutor's Office
Det. Robert Carucci – Hackensack Police Department
Det. John Dalton – Hackensack Police Department

## B. *Claims Relating to Criminal Trial Proceedings*

Claims remaining:   None

Defendants remaining:  None

Claims dismissed:   All (some without prejudice)
         Complaint ¶¶ 1, 2, 3, 17, 18, 19, 20, 24, 30

Defendants dismissed:  Bergen County Prosecutor's Office
         John Doe Assistant Superintendent of Clifton Schools
         David Calviello – Assistant Prosecutor, Bergen County
         John Higgins – First Assistant Prosecutor, Bergen County
         John Molinelli, Bergen County Prosecutor
         Teresa Duenas – Mother of K.M.
         George Santiago – Det. Bergen County Prosecutor's Office
         Daniel Andriulli – Computer Forensics, Bergen County Prosecutor
         Maria Zambrano – Mother of K.M.
         Honorable Judge James Guida – Bergen County Superior Court

## C. *Claims Relating to Lack of Medical Treatment at South Woods State Prison*

Claims remaining:  All  Deliberate indifference, denial of medical treatment

Defendants remaining: All  John Doe Superintendent South Woods State Prison
         John Doe Doctor – South Woods State Prison
         Jane Doe Nurse Practitioner – South Woods State Prison
         Complaint ¶¶ 21, 22, 23

Claims dismissed:   None

Defendants dismissed:  None

## D. *Claims Relating to Imprisonment at Bergen County Jail*

Claims remaining:   Denial of medical care
         Disregard of grievances,
         Opening legal mail

Defendants remaining:  Dr. Hemsley – Bergen County Jail Medical Department
         Capt. Pawson – Bergen County Jail in charge of medical
         Lt. Pickel – Bergen County Jail in charge of grievances
         Warden Bigott – Warden Bergen County Jail
         Capt. Davies – Bergen County Jail
         Officer John Doe in mail room of the Bergen County Jail

|                       | Complaint ¶¶ 7, 12, 13, 14, 15, 27 |
|-----------------------|------------------------------------|
| Claims dismissed:     | Liability of Bergen County Jail<br>Opening private mail<br>Retaliation<br>Mayonnaise allergy |
| Defendants dismissed: | Bergen County Jail<br>Kurk Leenig – Supervisor, Mailroom Bergen County Jail<br>Lt. Acacios – Bergen County Jail<br>Aramark Foods – Bergen County Jail<br>Complaint ¶¶ 25, 26, 28, 29 |

## A. Misjoinder and the Need for Severance

This complaint contains many unrelated allegations against disparate defendants that are not properly joined in a single complaint under Federal Rules of Civil Procedure 18 and 20. A district court may raise the issue of improper joinder *sua sponte,* and I do so here. *See Chen v. Shan Qiao Zhang*, No. 10-6255, 2011 WL 612727, at *2 (E.D. Pa. Feb. 10, 2011) (citing FED. R. CIV. P. 21; *Schulman v. J.P. Morgan Inv. Mgmt., Inc.*, 35 F.3d 799, 804 (3d Cir. 1994); *Braverman v. Kaskey, P.C. v. Toidze*, No. 09-3470, 2010 WL 4452390, at *2 (E.D. Pa. Nov. 4, 2010)). Given every benefit of the doubt, this document contains no fewer than three sets of properly joined claims. I will therefore require that the claims be severed into three groups. Categories A and B (which have been dismissed, in some cases without prejudice) will remain together under the current docket number. Category C and Category D will be refiled, each under a new, separate docket number.

Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." In a multi-defendant case like this one, however, the propriety of joinder is most directly controlled by the Rule 20 limits on joinder of defendants. Federal Rule of Civil Procedure 20(a)(2) states:

> Persons . . . may be joined in one action as defendants if:

    (A) Any right to relief is asserted against them jointly,
        severally, or in the alternative with respect to or
        arising out of the same transaction or occurrences; and
    (B) Any question of law or fact common to all defendants
        will arise in the action.

FED. R. CIV. P. 20(a)(2). *See also McDaniel v. Lanigan*, No. 12-3834, 2012 WL 5880371, at *3

(D.N.J. Nov. 21, 2012) (claims by prisoners are not exempt from Rules 18 and 20) (citing

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). Rule 20's requirements are to be liberally

construed in the interest of convenience and judicial economy. *See Paladino v. Newsome*, No.

12-2021, 2012 WL 3315571, at *5 (D.N.J. Aug. 13, 2012) (citing *Swan v. Ray*, 293 F.3d 1252,

1253 (11th Cir. 2002)). But this application, however liberal, "is not a license to join unrelated

claims and defendants in one lawsuit." *Id.* (citing *Pruden v. SCI Camp Hill*, 252 F. App'x 436

(3d Cir. 2007) (per curiam); *George*, 507 F.3d 605; *Coughlin v. Rogers*, 130 F.3d 1348 (9th Cir.

1997)).

    Under Category A, McKinney asserts claims of false arrest and illegal search and seizure

against nine defendants: detectives, police officers, and parole officers involved in his arrest.

    Under Category B, McKinney asserts numerous claims relating to the gathering and

presentation of evidence at his trial against nine defendants: the presiding judge, the victim's

parents, two Bergen County prosecutors, the Bergen County Prosecutor's Office itself, two

detectives employed by that office, and an anonymous assistant superintendent of the Clifton

public schools.

    Under Category C, McKinney asserts claims relating to his former confinement at South

Woods State Prison. He sues three anonymous "Doe" defendants: a doctor, a nurse, and the

Superintendent of the prison. All of these claims relate to the alleged denial of medical treatment

or deliberate indifference to McKinney's medical needs.

Under Category D, McKinney asserts claims relating to his former confinement at Bergen County Jail against ten defendants. One defendant, the Jail itself, is alleged to be liable for all of the wrongdoing alleged to have occurred on the premises. Two defendants—the mail room supervisor, and a John Doe officer—allegedly opened his personal and legal mail. One, a lieutenant, allegedly threatened retaliation when McKinney attempted to investigate the opening of the mail. One, a food service provider, persists in serving mayonnaise despite McKinney's allergy to that condiment. And five—a doctor, the warden, two captains, and a lieutenant—have ignored McKinney's grievances, especially his complaints about a thin mattress and his need for medical treatment of various conditions.

Before breaking it down any further, I note at the outset that the A and B (investigation and trial) claims clearly cannot be joined with the C and D (prison) claims. They simply have nothing in common. There is no overlap of defendants or claims. They do not arise out of the "same transaction or occurrence," nor is there any "question of law or fact common to all defendants" that would permit joinder of these parties under Rule 20(a)(2), Fed. R. Civ. P. Although the complaint is less than clear, the time frame is presumably different as well.

Narrowing down, I will allow A and B to remain together because they arise out of the same "transaction or occurrence," broadly construed. Although the defendants do not overlap, the investigation and trial could be said to be a continuous series of interrelated events. And although there is no duplication of claims between A and B, there is a perceptible relation between them. The A investigation and search led to the charges that were tried at the B trial. The A search, for example, yielded the drugs admitted in evidence at the B trial. Both groups of claims name persons (although not the same persons) employed by the Bergen County Prosecutor's Office. As noted above, I have dismissed all of the A and B claims, albeit without

prejudice in some cases. That circumstance also ameliorates whatever joinder issues may remain. In short, A and B must be severed from C and D, but A and B need not be severed from each other.

The remaining question is whether Categories C and D must be severed from each other. The defendant rosters of C and D do not overlap at all. There is no common transaction or occurrence, because the events alleged occurred at separate prisons, with no common participants (except the plaintiff, of course). The courts, moreover, have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison, let alone multiple prisons. *See McDaniel*, 2012 WL 5880371, at *3 (finding that plaintiff cannot "lump" claims of limitations on commissary purchases, limitations on frequency of showers, lack of approval of meals by the U.S. Food and Drug Administration, denial of Halal food to Muslim prisoners, denial of kosher milk and glatt kosher meals to Jewish inmates, and bars on wearing tallits in a single pleading); *see also Miller v. Lanigan*, No. 12-4470, 2013 WL 1750138, at *2 (D.N.J. Apr. 23, 2013) (stating that a plaintiff cannot "lump" all his challenges into a single pleading in violation of Federal Rules of Civil Procedure 18 and 20).

There is one respect, however, in which C and D may be said to involve a common "question of law or fact." Fed. R. Civ. P. 20(a)(2). McKinney claims to suffer from certain chronic medical conditions, including a hernia, and he alleges that officials at South Woods (C) and Bergen County Jail (D) disregarded his medical needs in a similar manner. Thus the law relating to deliberate indifference, as well as the proofs of plaintiff's medical conditions, might overlap as to those medical-related claims. But that is not enough; the Rule provides that a common question is one that is "common to *all* defendants." *Id.* (emphasis added).

Strait is the gate of Rule 20(a). Only if there is at least one claim properly joining *all* defendants can the plaintiff then invoke Rule 18 to append other claims relating to only *some* defendants. "Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts *at least one claim* to relief against *each* of them that arises out of the same transaction or occurrence and presents questions of law or fact common to *all*." 7 Charles Alan Wright et al., Federal Practice and Procedure § 1655 (3d ed.) (emphasis added). Then, and only then, "Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions." *Id.*

There is no single claim that properly joins all the defendants in Categories C and D. The medical-related claims in C and D may meet the Rule 20(a) commonality requirement, but not as to all defendants. Although all of the C defendants are named in the medical-related claims, not all of the D defendants are.[13] I find, therefore, that the C claims cannot be joined with the D claims.

A word about the severance remedy I have selected: In case of misjoinder, "a court may not simply dismiss a suit altogether.  Instead, the court has two remedial options:  (1) misjoined parties may be dropped 'on such terms as are just'; or (2) any claims against misjoined parties 'may be severed and proceeded with separately.'" *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (quoting Fed. R. Civ. P. 21).  In *DirecTV*, the Third Circuit explained the effect of each of these options:

---

[13]     One, for example, is the allegedly illegal opening of plaintiff's legal mail; another is the administrators' failure to respond to grievances. I set aside the claims against the food service provider, Aramark, the umbrella claim against the Jail, and the claim of retaliation, which have been dismissed at the screening stage.

> When a court "drops" a defendant under Rule 21, that defendant is dismissed from the case without prejudice. *Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1068 (3d Cir. 1979); *see also Elmore v. Henderson*, 227 F.3d 1009, 1011-12 (7th Cir. 2000) (Posner, J.). When that occurs, the "statute of limitations is not tolled" because we treat the initial complaint "as if it never existed." *Brennan v. Kulick*, 407 F.3d 603, 606 (3d Cir. 2005) (internal quotation marks omitted). But when a court "severs a claim against a defendant under Rule 21, the suit simply continues against the severed defendant in another guise. *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n.6 (3d Cir. 1999); *Elmore*, 227 F.3d at 1012. The statute of limitations is held in abeyance, and the severed suit can proceed so long as it initially was filed within the limitations period. *Id.*
>
> Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is "just."

*DirecTV*, 467 F.3d at 845.

The applicable statute of limitations for Mr. McKinney's § 1983 claims is two years. *See Vickers v. Childs*, 530 F. App'x 104, 105 (3d Cir. 2013) (per curiam) (stating that a § 1983 claim is governed by the applicable state's personal injury statute of limitations and New Jersey has a two year statute of limitations for such claims) (citing N.J. STAT. ANN. § 2A:14-2(a)). Dropping claims, then, might pose a genuine risk of dismissal on statute of limitations grounds. That outcome, considered in light of plaintiff's *pro se* status, would be unjust.

Accordingly, I have decided to sever the case and direct that the C and D claims be pursued in separate actions. The Clerk will file the Complaint, together with this Opinion and the accompanying Orders, under two newly-created civil numbers. I recognize that, even with *in forma pauperis* status, Mr. McKinney, as a prisoner, will be placed in the position of paying two new filing fees in instalments, by deductions from his prison account. I do not regard that as an

additional hardship, but merely as an enforcement of the joinder rules; these claims should have been filed in (at least) three separate actions in the first place.[14]

Within 30 days, the plaintiff will file a simple notice or letter stating whether he wishes to proceed with those two new actions. If so, he will be deemed to have satisfied the requirements for *in forma pauperis* status, based on my previous granting of his application in this, the unsevered case, and I will enter an order to that effect. My order will identify the claims that have survived the screening process. If plaintiff elects to proceed with those prescreened claims, I will direct the defendants to answer them.

## IV.   CONCLUSION

For the foregoing reasons, the claims raised in this action are dismissed with or without prejudice, or severed from this case, all in accordance with two Orders, titled Order No. 1 (screening) and Order No. 2 (severance), which will be entered.

Dated:  June 4, 2014

KEVIN MCNULTY
United States District Judge

---

[14]   In any event, I would probably sever C and D from each other for trial as a discretionary matter. The advantages of trying common issues together are here outweighed by the inefficiencies of trying disparate defendants, who have no claims against each other, based on events that occurred at separate institutions. *See* Fed. R. Civ. P. 42(b), 20(b)(court may issue orders, including orders for separate trial, "to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party.")